**SO ORDERED: December 21, 2004.**



_____
**Anthony J. Metz III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| THE MIKADO RESTAURANT ) | CASE NO. 04-06404-AJM-11 |
| OF INDIANAPOLIS, INC., ) | |
| d/b/a MIKADO JAPANESE RESTAURANT ) | |
| ) | |
| Debtor. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING DEBTOR'S MOTION TO ASSUME**

*Findings of Fact*

1.   The Debtor filed its chapter 11 case on April 12, 2004 (the "Petition Date"). Pursuant to 1107(a) and 1108 of the Bankruptcy Code, the Debtor is operating its business and managing its property as a debtor-in-possession.

2.   Prior to the Petition Date, the Debtor entered into a lease of non-residential real property with Indianapolis Downtown, Inc. ("IDI"), whereby Debtor leased 4,849 square feet in the

first floor retail area of the parking garage located on Illinois Street between Georgia Street and Maryland Street in downtown Indianapolis, Indiana (the "Leased Premises") for the operation of a Japanese restaurant. The lease was assigned to Square 74 Associates LLC ("Square 74"). Under the terms of the lease, the Debtor was required to maintain casualty insurance, including fire coverage, on all improvements. In the event the Leased Premises were damaged or destroyed, Square 74, at its sole expense, was required to restore all portions of the damaged Leased Premises *except* improvements made by the Debtor, and the Debtor's obligation to pay rent was abated until such restoration was completed.

3. A fire occurred in the Leased Premises on October 29, 2003 and the restaurant ceased operation. The Debtor notified Square 74 and its property manager of the fire about a week afterward. The Debtor was current on the rent as of October, 2003 but believed that Square 74 was responsible to restore the damaged premises and therefore its rent obligation was abated. Square 74 inspected the Leased Premises, and determined that the damage caused by the fire had occurred only to the improvements made by the Debtor and therefore, restoration was the Debtor's responsibility. Consequently, Square 74 refused to abate the rent.

4. Eventually, Square 74 filed in the Marion County Superior Court (the "State Court") its Complaint for Ejectment and Damage (the "State Court Complaint"). A hearing on Square 74's request for prejudgment possession of the Leased Premises was scheduled for April 12, 2004 but that hearing was not held due to the chapter 11 filing.

5. Square 74 had previously sought an emergency relief from stay to pursue its ejectment action in State Court. On May 28, 2004, this Court entered an order denying Square 74's motion and abstained from deciding whether the Debtor's right to possession of the Leased Premises had been terminated pre petition, acknowledging that "Square 74 is asking only for a finding that the Debtor's

2

right to possession of the Leased Premises- and not the Lease itself– was terminated." (Order, pages 6 and 7)

6.   This court acknowledged in the Order that, "Despite the inevitable return of the parties to this Court, however, the Court remains convinced that the State Court is the forum to determine the termination of possession issue since it involves purely issues of state law, involves no bankruptcy matter, and can be heard as expeditiously in State Court as it can be heard here." (Order, page 7).

7.   Subsequent to the Order, the parties returned to the Marion Superior Court, and on August 9, 2004, the Honorable Thomas J. Carroll entered Findings of Fact, Conclusions of Law and Judgment Entry.  The essence of the entry by Judge Carroll is that "Mikado's right to possession of the Leased Premises has terminated under Indiana law."  (Judgment entry, paragraph 3).

8.   The Marion Superior Court did not make a determination that the lease itself was terminated, but rather only that the Debtor's right to possession had been terminated under Indiana law.

9.   This matter is now before the Court upon the Motion to Assume Unexpired Lease of Non-Residential Real Property with Indianapolis Downtown, Inc. (the "Motion"), which was filed by the Debtor on or about May 18, 2004, to which Square 74 objected on June 3, 2004. (the "Objection").  A hearing on the Motion and the Objection was held on August 24, 2004 wherein the Debtor appeared by counsel Gary L. Hostetler and Christopher Baker; Square 74 appeared by James Rossow and Brock Jordon.  At the conclusion of the hearing, the Court instructed counsel to submit post hearing authority which they did on September 14, 2004.  The Court announced its findings and conclusions in open court on November 18, 2004.  This written entry contains those findings and

3

conclusions.

## *Conclusions of Law*

10.     Pursuant to 28 U.S.C. §§1334 and 157, the court has jurisdiction to hear the Motion. Under 28 U.S.C. §157(b)(2)(A) and (O), this matter is a core proceeding. The relief requested in the Motion is sought pursuant to 11 U.S.C. §365(a).

11.     Pursuant to the Motion, Debtor is seeking an order of the Court authorizing the assumption of the unexpired lease of the Leased Premises. This lease is necessary and essential to the Debtor's operation and has significant value to the estate as the lease in question is significantly under the current market rate for premises of like nature.

12.     11 U.S.C. §365 addresses the issue of executory contracts and unexpired leases. As far as leases go, only "unexpired" leases can be assumed under this section, subject to the court's approval, and if the "unexpired" lease is also in default, certain conditions must be met before the lease can be assumed:

> (b)(1)   If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee– (A) cures, or provides adequate assurance that the trustee will promptly cure, such default; (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease.

13.     A threshold requirement to the Debtor's ability to assume the Lease under §365 is that the Lease be "unexpired". Whether, as here, the pre petition termination of the Debtor's right to possession renders the Debtor ineligible for §365 relief depends in part upon the terms of the lease and whether *the lease* was terminated pre petition under state law.

14. Section X of the Lease provides Square 74 with a choice of remedies. Paragraph 10.01 of the Lease provides that "upon the happening of any one or more of the following events of default, that the landlord may terminate the lease." The events of default are enumerated thereafter. Section 10.02, gives Square 74 the right of reentry upon the event of default, and the right to relet, mitigate and to credit amounts received against the tenant's obligations. The Debtor remains liable for rent "in addition to all other obligations" of the Debtor under the lease. Rent paid by the Debtor after Square 74 re-enters is to be credited against Debtor's obligations.

15. A lease with similar provisions was considered in *Gigax v Boone Village Limited Partnership*, 656 N.E. 2d 854 (Ind. App. 1995). There, the lease, like the lease here, contained the options of terminating lease or terminating the tenant's right of possession without terminating the lease. There, the landlord filed a complaint asking for termination and a motion for ejectment asking for cancellation which the Indiana Court of Appeals found was clearly sufficient notice of the landlord's intent to *terminate the lease*. The court acknowledged the general rule that a tenant will be relieved of any obligation to pay further rent if the landlord deprives the tenant of possession and beneficial use and enjoyment of any part of the demised premises by actual eviction. *Id.* at 858. The court further noted that an exception to the general rule exists when the lease includes a savings clause expressly providing that termination shall not effect the accrual of liability for rent. Following a review of the facts in the case, the court noted that the landlord had two options upon default. "First, it could re-enter and relet, and subject to mitigation, could recover future rent and related damages. Second, it could terminate the lease, recover rent and related damages accruing prior to termination, and lease the premises to another party for its own benefit. Boone Village choose the second option. In so doing, it forfeited any right, absent an expressed provision to the

5

contrary, to post-termination rent and related damages." *Id.* Given the fact that the damages awarded depended upon which option the landlord chose, it follows that the landlord understood that "re-entry to relet and re-entry after termination are two different things" 656 N.E.2d at 857. So, at least under Indiana law interpreting a lease with similar language, termination of the Debtor's right of possession is not tantamount to termination of the lease.

16. In *In re Ontario Entertainment Corp.*, 237 B.R. 460 (Bankr. N. D. Ill. 1999), the lease there contained a provision where, upon the occurrence of an event of default, the landlord was to give 30 days notice to cure the default and upon default, landlord could terminate tenant's right of possession without terminating the lease. The *Ontario* court apparently was of the opinion that the option of terminating the tenant's right to possession under the lease was distinguishable from the landlord's opting to terminate the lease altogether. The court there stated that "[H]ere, landlord has exercised its right to seek possession rather than termination of the lease" and the court determined, with little discussion, that it could be assumed under §365.

17. This court, although cognizant of the authority cited by Square 74, including *In re Williams,* 144 F. 3d. 544 (7th Cir. 1998); *In re Robinson v. Chicago Housing Authority*, 54 F.3d 316 (7th Cir. 1995), finds that those cases are inapposite to the facts before this court.

18. In *Williams v. Chicago Housing Authority*, 144 F.3d 544, (7th Cir. 1998), the court considered whether the lease had terminated pre petition but the issue of whether the lease was assumable under §365 was not before the Court. In *Williams*, there was *not* an option of choosing termination of right to possession as opposed to terminating lease altogether; indeed, the landlord there could terminate the lease upon 15 days notice after default and a state statute provided that, if the tenant did not pay the rent due within the time specified in the notice, the landlord could consider

6

"the lease ended". The Court found, and the debtor there did not dispute, that the lease had ended under its terms. However, the debtor there argued that, since the landlord had not obtained a judgment of possession, the tenant may still have valid defenses preventing the landlord from obtaining its judgment of possession under state law. Given the fact that the presence of viable defenses would have made a difference under state law as to whether the lease was terminated pre petition, the court in *Williams* affirmed the bankruptcy court's lifting of the stay so that the state court could determine the merits of the tenant's defenses.

19.     In *Robinson v. Chicago Housing Authority*, 54 F.3d 316 (7th Cir. 1995) the landlord, the Chicago Housing Authority ("CHA") served the tenant with notice that, if rent was not paid in 14 days, her lease would be terminated on the 15th day. The tenant there failed to pay on the 15th day and the CHA filed a forcible entry and detainer action. The CHA obtained a judgment of possession which gave it the option of accepting the tenant's rent but that if it did chose not to accept the rent, a writ of possession would issue. The tenant attempted to pay the full rent but the CHA did not accept it. The tenant filed a chapter 13 before the writ of possession could issue. By so doing the tenant retained possession of the leased premises. The bankruptcy court granted the CHA relief from stay and held that there was no lease left to assume. Before the judgment of possession was issued, the tenant filed a chapter 13 case. The debtor argued that although her lease was "terminated" it was not "expired" and therefore capable of assumption under §365. The court held that §365 makes no distinction between "expired" and "terminated" residential leases. Rather, whether an "unexpired" lease is able to be assumed calls for a determination whether a lease has ended under

state law. The case set forth five distinct steps involved in evicting a tenant [1]. There, where the only option in the lease was to terminate the lease, one had to determine whether "sufficient" steps in the eviction process had occurred prior to the filing to render the lease terminated. Termination of the tenant's right of possession as one of those steps in the eviction process perhaps was far enough along to render the lease terminated where the only option in the lease, upon default, was to terminate the lease and evict the tenant. However, where termination of the tenant's right to possession is merely one of the options available short of terminating the lease, it may not be sufficient to render the lease terminated. It was determined in *Williams* that the landlord proceeded to take the steps necessary to terminate the lease. One of those steps happened to be termination of the tenant's right to possession. However, in *Robinson* and *Williams*, the landlord in both cases opted to terminate the lease altogether, not just the tenant's right to possession. The termination of the lease ended whatever obligations the tenant had under the lease, and there was no provision that the landlord would be entitled to additional rents post termination.

20.     *In re Finkley*, 203 B.R. 95 (Bankr. N. D. Ill. 1996), the landlord had not obtained a judgment of possession prior to the bankruptcy filing. Square 74 points to a passage in footnote 2 of the *Finkley* case interpreting *Robinson*: "a lease is expired, for purposes of the right to assume under Section 365, when the debtor's tenancy is terminated, *even though other aspects of the lease agreement continue*". However, the court also believes that the reasoning in *Finkley* is distinguishable based upon its facts from the instant proceeding. *Robinson* made no mention of any

---

[1] The first step is that the tenant is delinquent in rent; second, the landlord notifies tenant of time period in which to pay rent; third, the period in which to pay rent passes; fourth, the landlord sues for possession and obtains judgment for possession, and fifth, a writ of possession issues. In the Williams case, the timing of the bankruptcy filing fell between steps 4 and 5; the CHA had obtained a judgment of possession, but no writ of possession had been issued.

landlord option to terminate tenant's right of possession; in *Robinson,* the only option or at least the chosen option was the termination of the lease, and therefore, it is questionable as to what "other aspects of the lease agreement" remained.

21. Only in *Gigax* and *Ontario* was there an option between "termination of the tenant's right of possession' and "termination of the lease". In both of those cases, it was evident that "termination of the tenant's right to possession" alone was not synonymous with termination of the lease altogether. The two options involved different remedies and damages.

22. In the lease here, Square 74 had two options and there is no dispute that Square 74 could have elected to terminate the lease under Section 10.01. Had the lease been terminated prior to the bankruptcy filing, there would be nothing for the debtor to assume under §365. Alternatively, under Section 10.02, Square 74 could have re-entered, relet and mitigated its damages which is the remedy it elected. Because it chose this remedy, the Debtor, under the terms of the lease, may not have had the right to possess the Leased Premises, but the lease remained executory in nature in that rights and responsibilities existed with respect to both parties, which would not be the case had the lease expired on its own terms or had it been terminated.

23. The right to possession and termination of the lease itself are separate and distinct concepts, the court finds that the debtor does have a right under §365 to assume the lease, since the lease is clearly unexpired, assuming the debtor can satisfy the requirements as called for under subsection (b)(1) of 11 U.S.C. §365. The court does not make a ruling on the cure issues at this time but, if the parties are unable to reach an agreement, will schedule a hearing at the request of the Debtor or the landlord. The court notes, however, for the benefit of all parties, the cure must be prompt.

9

24. Outside of bankruptcy, the Debtor would not be able to regain possession of the Leased Premises and resume business operations as it has done here. But, the Bankruptcy Code provides debtors with certain rights that would not exist absent bankruptcy and alters creditor's rights that would remain intact absent bankruptcy. Consider the scenario where an automobile is repossessed by the creditor pre petition. If no bankruptcy is filed, the creditor retains possession and sells the automobile and applies the proceeds to the outstanding debt. However, an intervening bankruptcy after repossession and before sale changes that. The debtor, upon a showing that it can adequately protect the creditor's interest, can regain possession of the car since the estate's and the debtor's interest (the right of redemption) overrides the creditor's right to keep it. Similarly, the creditor that obtains a judgment of foreclosure may nonetheless have to relinquish possession to the debtor once a bankruptcy is filed, where, absent bankruptcy, a debtor's only recourse to regain possession would be to exercise its right of redemption. In a chapter 13, the debtor would be entitled to cure the arrearage and reinstate the mortgage. These provisions are cornerstones to giving a debtor the fresh start as contemplated by the Bankruptcy Code. There is no rational or logical reason why those situations would not be analogous to the issue presently before the court. Had the drafters of the Bankruptcy Code wished to place restrictions on a debtor's right to assume an unexpired lease, they clearly could have done so since 11 U.S.C. §365(b)(1) already contains conditions precedent to the debtor's assumption of the unexpired lease. If Congress intended that an unexpired lease could not be assumed if the debtor no longer had the right to possession under state law, it could easily have added such a requirement. It did not, and the unambiguous language of 11 U.S.C. §365 grants the debtor rights that the debtor would not have under state law and that is to assume an unexpired lease. If, however, there is a default in that unexpired lease, that

10

assumption is conditioned upon the debtor satisfying the requirements of 11 U.S.C. §365(b)(1)(A), (B), and (C).

25. Any finding of fact shall be considered a conclusion of law and any conclusion of law a finding of fact in order to support the judgment and entry of the court.

26. The Debtor's Motion to Assume Unexpired Lease of Non-Residential Real Property with Indianapolis Downtown, Inc. filed on or about May 18, 2004, be and hereby is GRANTED, subject to an agreement between the parties with regard to the factors set forth in 11 U.S.C. §365(b), or determination by this court as to those factors.

###

HOSTETLER & KOWALIK, P.C.
101 West Ohio Street
Suite 2100
Indianapolis, Indiana 46204-4211

Distribution attached.

DISTRIBUTION TO:

Christopher E. Baker
HOSTETLER & KOWALIK, P.C.
101 West Ohio Street, Suite 2100
Indianapolis, Indiana 46204-4211

United States Trustee
101 West Ohio Street, Suite 1000
Indianapolis, IN 46204

James E. Rossow, Jr.
RUBIN & LEVIN, P.C.
500 Marott Center
342 Massachusetts Avenue
Indianapolis, IN 46204-2161

Edward W. "Skip" Landon
Vice President/ CFO
Clever Ideas, Inc.
180 North Stetson Avenue, Suite 5300
Chicago, IL 60601

Masao Sakamoto
Yamasho, Inc.
750 Touhy Avenue
Elk Grove, IL 60007

Joy McGuinness
McFarling Foods
333 West 14th Street
Indianapolis, IN 46202

David J. Colman
Colman & Cure
114 South Grant Street
Bloomington, IN 47408

Stewart Todd Hittinger
Special Assistant, U.S. Attorney
District Counsel Office
P.O. Box 44010
Indianapolis, IN  46244

James G. Lauck
KROGER, GARDIS & REGAS
111 Monument Circle, Suite 900
P.O. Box 44941
Indianapolis, IN 46204-5125

Gordon L. Harper
4628 North Franklin Road
Indianapolis, IN 46226

Steven P. Taylor
6100 North Keystone Ave., Suite 503
Indianapolis, IN 46220

Diane L. Graham
2 North Riverside Plaza, Suite 950
Chicago, IL 60606

David T. O'Malia
McNamara, LLC
9800 Crosspoint Blvd.
Indianapolis, IN 46256

Jeffrey J. Graham
SOMMER BARNARD ACKERSON, P.C.
One Indiana Square, Suite 3500
Indianapolis, IN 46204